# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

WALTER EDWARD KOSTICH, JR.,   )
                             )
          **Petitioner,**      )
                             )
**v.**                         )     **Case No. 12-CV-0065-CVE-PJC**
                             )
**TRACY MCCOLLUM, Warden,**   )
                             )
          **Respondent.**    )

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1) filed by Petitioner, Walter Edward Kostich Jr., a state prisoner appearing pro se. Petitioner also separately filed several exhibits in support of his petition (Dkt. ## 2, 28). Respondent filed a response to the petition (Dkt. # 12), and provided the state court record necessary for resolution of Petitioner's claims (Dkt. # 13). Petitioner filed a reply (Dkt. # 27). Petitioner has also filed a motion for a "due process hearing," and a brief in support. (Dkt. ## 50, 51). In that motion, Petitioner argues that this Court's denial of his previous "motion for bail release or bail hearing on the merits" (Dkt. # 42) was a "vague and capricious unreasonable [sic] application of clearly established fed[eral] law." See Dkt. # 51 at 1. Petitioner again requests a "due process [bail] hearing on the merits." Id. For the reasons discussed below, the petition for writ of habeas corpus shall be denied. Therefore, Petitioner's motion for a hearing on bail release is declared moot.

### *BACKGROUND*

On January 12, 2005, between 2:00 and 2:30 a.m., Petitioner set fire to the home of Corbin and Katherine Gilstrap. See Dkt # 28-2 at 64; Dkt. # 13-11, O.R. Vol. II at 307-10. At the time of the fire, multiple people were present in the home, including Corbin and Katherine Gilstrap, their small child, and Katherine's mother. See Dkt. # 13-8, Tr. Sent. Hr'g at 5-6; Dkt. # 13-11, O.R. Vol.

II at 307. The Gilstraps were able to escape the home without substantial physical injury; however, their home was seriously damaged. See Dkt. # 13-8, Tr. Sent. Hr'g at 35. A surveillance video camera captured images of Petitioner placing the incendiary device, a container of gasoline with a fuse attached, on the front doorstep of the Gilstrap home and lighting the fuse. See Dkt. # 13-11, O.R. Vol. II at 308. Petitioner's actions resulted from a disagreement relating to Mr. Gilstrap's repair of, or alleged failure to repair, Petitioner's personal computer(s). See Dkt. # 28-2 at 64; Dkt. # 13-11, O.R. Vol. II at 308-10.

A federal indictment, filed February 8, 2005 in the United States District Court for the Northern District of Oklahoma, Case Number 05-CR-00013-TCK, charged Petitioner with Unlawful Possession of a Destructive Device (Count One) and Unlawful Manufacture of an Unregistered Destructive Device (Count Two).[1] See Dkt. # 28 at 7-8. Petitioner pled guilty to Count Two and was convicted of Count One at jury trial. See id. at 15. On September 30, 2005, the federal district judge sentenced Petitioner to a term of sixty-three (63) months imprisonment on both Count One and Count Two, with the sentences to run concurrently. See id. at 15-16.

On February 3, 2005, the state of Oklahoma charged Petitioner with Arson - First Degree in Tulsa County District Court, Case Number CF-2005-0514. See id. at 20-21. The case was subsequently dismissed, by request of the State, on March 17, 2005. See id. at 25. On March 16, 2007, approximately eighteen (18) months after Petitioner's federal sentencing, the state of

---

[1]     A superceding indictment filed May 4, 2005 added two counts: Malicious Damage and Destruction, by Means of Fire and an Explosive, Real Property Used in Any Activity Affecting Interstate Commerce (Count Three) and Use of Fire and Explosive to Commit a Felony Which May be Prosecuted in a Court of the United States (Count Four). See Dkt. # 28 at 10-13. However, at jury trial, Petitioner was acquitted of both these additional counts. See id. at 15.

Oklahoma recharged the Petitioner with Arson - First Degree in Tulsa County District Court, Case Number CF-2007-1480. See id. at 44-47.

On April 2, 2009, Petitioner entered a blind plea of guilty in CF-2007-1480 to the sole charge of Arson - First Degree. See Dkt. # 13-7, Tr. Blind Plea Hr'g at 3. On June 30, 2009, based on the plea, the trial judge sentenced Petitioner to twenty (20) years imprisonment. See Dkt. # 13-8, Tr. Sent. Hr'g at 53. The judge ordered that Petitioner be credited with time served, including time served in federal custody on related charges, and that his sentence in CF-2007-1480 run concurrently with the remainder of his federal sentence in 05-CR-00013-TCK. Id. During the plea and sentencing proceedings, Petitioner was represented by attorney Ashley Webb. See Dkt. # 13-7, Tr. Blind Plea Hr'g; Dkt. # 13-8, Tr. Sent. Hr'g.

On July 10, 2009, Petitioner filed a motion to withdraw his guilty plea.[2] See Dkt. # 13-11, O.R. Vol. II at 324-37, 328-30. On September 28, 2009, a hearing was held on Petitioner's motion to withdraw his plea. See Dkt. # 13-9, Tr. Mot. Withdraw Plea Hr'g. The district court denied the motion. Id. at 49. Petitioner was represented by attorney Brian Martin at the hearing on the motion to withdraw his plea. Id. at 1.

Represented by attorney Ricki J. Walterscheid, Petitioner filed a petition for writ of certiorari in the Oklahoma Court of Criminal Appeals (OCCA). See Dkt. # 12-1. He raised the following sole proposition of error:

> Proposition I:  The plea of Mr. Kostich was not intelligently, knowingly, and voluntarily entered, as such the District Court abused its discretion in disallowing him to withdraw the plea.

---

[2]   Petitioner filed a pro se motion to withdraw his plea on July 10, 2009. See Dkt. # 13-11, O.R. Vol. II at 324-37. On the same day, his attorney Ashley Webb also filed a motion to withdraw Petitioner's plea. See id. at 328-30.

Id. at 6. In an unpublished opinion, filed June 18, 2010, in Case No. C-2009-892, the OCCA denied the petition for writ of certiorari. See Dkt. # 12-2.

On August 23, 2011, Petitioner filed an application for post-conviction relief. See Dkt. # 28 at 75. Petitioner raised four (4) propositions, as follows:

| | |
|---|---|
| Proposition I: | Ineffective assistance of Appellate Counsel. |
| Proposition II: | Double Jeopardy. |
| Proposition III: | Ineffective counsel prejudiced the outcome of the preliminary hearing and deprived Petitioner of his wright [sic] to Constitutional protections under the U.S. Constitution 5th, 6th and 14th Amend. |
| Proposition IV: | Ineffective assistance of court appointed counsel depraved [sic] Petition of his wright [sic] to constitutional protections under the U.S. Constitution 5th, 6th and 14th Amend. |

(Dkt. # 2 at 28). The trial court denied the application. Id. at 26-35. On January 27, 2012, in Case No. PC-2011-1076, the OCCA affirmed the trial court's denial of post-conviction relief (Dkt. # 12-3).

On February 14, 2012, Petitioner commenced this federal action by filing his pro se petition for writ of habeas corpus (Dkt. # 1). Petitioner raises six (6) grounds of error, as follows:

| | |
|---|---|
| Ground I: | Ineffective counsel coorced [sic] a blind plea of Guilty that was not knowing or intelligent and petitioner should have been allowed to withdraw said blind plea. |
| Ground II: | Ineffective assistance of appellate counsel provided by Okla indigent defence [sic] system. |
| Ground III: | Double Jeopardy. |
| Ground IV: | Ineffective assistance of counsel at preliminary hearing. |
| Ground V: | Ineffective trial counsel. |

Ground VI:     The Post Conviction Procedure Act of OS 22 § 1080 et sec is badly broken and failes [sic] the test of legislative intent.

(Dkt. # 1). Respondent argues that the OCCA's adjudication of Grounds I and II was not unreasonable or contrary to federal law, that Grounds III-V are procedurally barred, and that Ground VI is a matter of state law not cognizable on federal habeas review. See Dkt. # 12.

## *ANALYSIS*

### A.     Exhaustion/Evidentiary Hearing

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner raised Grounds I-V on either certiorari or post-conviction appeal and he has exhausted state remedies as to those claims. However, Petitioner has not raised Ground VI in the state courts and that claim is unexhausted. In light of the procedural posture of this case, it would be futile to require Petitioner to return to state court to exhaust Ground VI. Thus, there is an absence of available State corrective process for that claim, see 28 U.S.C. § 2254(b)(1)(B), and it is not barred by the exhaustion requirement. In part D below, the claim raised in Ground VI is denied on the merits under 28 U.S.C. § 2254(b)(2).

The Court also finds that Petitioner is not entitled to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000).

### B.     Claims adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions."  White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice."  White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)).  The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  Id. (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786-87 (2011)); see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Richter, 131 S. Ct. at 784-85. Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal courts review these claims under the deferential standard of § 2254(d).  Id. at 784; Schriro v. Landrigan, 550 U.S. 465, 474 (2007).  Further, the "determination of a factual issue made by a State

court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In this case, the OCCA adjudicated Ground I on certiorari appeal, and Ground II on post-conviction appeal. See Dkt. ## 12-2, 12-3. Therefore, the § 2254(d) standard applies to this Court's analysis of those grounds.

### 1.      Challenge to Petitioner's blind plea of guilty as involuntary (Ground I)

As his first ground of error, Petitioner claims, "[t]rial counsel Webb coerced Petitioner into filing a blind plea that was not knowing or intelligent considering the alternatives available but not known to Petitioner." (Dkt. # 1 at 5-6). Additionally, Petitioner argues his guilty plea was not intelligently, knowingly, and voluntarily entered because he was "under the influence of mind altering anti depressants and stated in open court he felt tortured into a plea and had no other choice." Id. at 6. Finally, Petitioner asserts that "[t]he Court pressed for a blind plea and Petitioner was denied due process of law by the Courts [sic] refusal to allow withdrawal of plea." Id. In rejecting this claim on certiorari appeal, the OCCA ruled as follows:

> The record shows that several times during the plea hearing, the court made sure Petitioner did not feel coerced into entering his plea. The record also supports the district court's finding that Petitioner was competent to understand the nature of the plea proceedings. The record as a whole supports the court's conclusion that Petitioner's blind plea was knowingly and voluntarily entered.

(Dkt. # 12-2 at 2). Respondent argues the OCCA's ruling was not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. See Dkt. # 12 at 6-14.

In Boykin v. Alabama, 395 U.S. 238 (1969), the Supreme Court held that a guilty plea must be entered into "knowingly and voluntarily." A plea is not voluntary unless the defendant knows the direct consequences of his decision, including the maximum penalty to which he will be

exposed. Worthen v. Meachum, 842 F.2d 1179, 1182 (10th Cir. 1988) (stating that critical inquiry is whether defendant knows of maximum possible sentence), overruled on other grounds by Coleman v. Thompson, 501 U.S. 722 (1991). Furthermore, it is not necessary that the record reflect a detailed enumeration and waiver of rights as a result of the guilty plea; rather the issue is simply whether the record affirmatively shows that the guilty plea was intelligent and voluntary. Stinson v. Turner, 473 F.2d 913 (10th Cir. 1973). "Whether a plea is voluntary is a question of federal law, but this legal conclusion rests on factual findings and inferences from those findings." Fields v. Gibson, 277 F.3d 1203, 1212 (10th Cir. 2002) (citing Boykin). The "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Although a petitioner's statements made at the guilty plea hearing "are subject to challenge under appropriate circumstances," they constitute "a formidable barrier in any subsequent collateral proceeding." United States v. Maranzino, 860 F.2d 981, 985 (10th Cir. 1988) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)); see also Romero v. Tansy, 46 F.3d 1024, 1033 (10th Cir. 1995). The Tenth Circuit emphasizes the importance of plea colloquies: "This colloquy between a judge and a defendant before accepting a guilty plea is not pro forma and without legal significance. Rather, it is an important safeguard that protects defendants from incompetent counsel or misunderstandings." Fields, 277 F.3d at 1214.

In this case, the record reflects that Petitioner's guilty plea was knowing, intelligent, and voluntary. The transcript of the plea hearing confirms that Petitioner understood the charge against him, and that he was "thinking clearly" when he entered his plea of guilty. See Dkt. # 13-7, Tr. Blind Plea Hr'g at 2. In addition, the trial judge explained the trial rights that Petitioner was waiving

by pleading guilty, and confirmed that Petitioner understood the meaning of entering a guilty plea.

See id. at 3.  As the following dialogue from the blind plea hearing demonstrates, the trial judge

carefully questioned Petitioner to confirm no one was coercing him to enter a plea of guilty:

> THE COURT: Sir, did you fill out this summary of facts form with the help of your attorney?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you go over it with Mr. Webb?  Speak up, please, Sir.
>
> THE DEFENDANT: He filled it out.  I just answered the questions.
>
> THE COURT: Okay.  That's what I needed to know.  Did he force you to answer any of the questions in a certain way?
>
> THE DEFENDANT: No.
> . . .
>
> THE COURT: Anyone forcing you to make this choice, Mr. Kostich?
>
> THE DEFENDANT: No.

Id. at 2-3.  Petitioner's attorney also informed the trial court of two questions on the "Plea of Guilty

– Summary of Facts" form that Petitioner struggled to answer.[3]  In response, the Court went over

those two questions with Petitioner on the record in great detail:

> MR. WEBB: I circled the numbers of the two questions that he wasn't quite comfortable answering in the affirmative with me.
>
> THE COURT: Okay.  So we just need to go over those.

---

[3]    The two questions the trial court reviewed with Petitioner in detail were questions twenty-nine and thirty.  See Dkt. # 13-7, Tr. Blind Plea Hr'g at 5-8.  The Court notes that question twenty-nine, which states "Have you been forced, abused, mistreated, or promised anything by anyone to have you enter your plea(s)?," was answered "Yes" on the plea form.  See Dkt. # 13-11, O.R. Vol. II at 318.  However,  the extensive colloquy between the trial court and Petitioner clearly demonstrates that Petitioner's intended answer to this question was "No." See Dkt. # 13-7, Tr. Blind Plea Hr'g at 5-6.  Therefore, after review of the blind plea hearing transcript, it appears that the unintended answer was circled by mistake.

MR. WEBB: Yes.

THE COURT: Sir, it says here, "Have you been forced, abused, mistreated or promised anything by anyone to have entered your plea?" Can you explain to me if you can answer that yes or no and why.

THE DEFENDANT: Your Honor, I would like to just say this has been a torture to me, all that I've gone through, all that I've endured. I've had to endure the death of my mother and my wife. I have to go through having cancer myself. I was just coming out of . . .

THE COURT: You're fine, Mr. Kostich. Take your time.

THE DEFENDANT: I was just coming out of major depression when I got hit with all of this stuff all at once.

MR. WEBB: I think he's referring to being recharged here in the State court.

THE COURT: Yes, sir.

THE DEFENDANT: Ever since then, it's just been agonizing on a day-to-day basis. You have no idea what I've gone through.

THE COURT: All right, sir. And I understand and I appreciate you giving me your concerns. I guess the question is I understand how you feel about the State pursuing charges against you, but the question, sir, is – this has to be your voluntary choice to enter this plea.

THE DEFENDANT: Can I get a tissue?

THE COURT: Sure. I need to know that this is a voluntary choice for you to enter this plea.

THE DEFENDANT: Yes.

THE COURT: All right. The other question, Mr. Kostich, is "Do you plead guilty of your own free will and without any coercion or compulsion of any kind?" And with the statements that you made earlier, I know that you feel like you've been treated unfairly, that the State prosecuting you here is unfair and that it's caused you much trouble and hardship.
Again, I don't mind having a trial for you next week, sir. That's my job is to have a jury up here for you to and make the decision. This question just needs to make sure that you are making the choice to plead guilty without any influence from anyone else. Is that true or false?

THE DEFENDANT: Just having to go through this a second time all over again, it's just been tortuous to me.  But have I been coerced?  I feel like I really don't have a choice.

THE COURT: Well, you don't have a choice that you are charged here and you don't have a choice that you are having to face a decision, but you do have a decision, Mr. Kostich.  You can have a trial.  And you know the outcome could be not guilty, it could mitigate the sentence in some way, it could be a guilty and a lot of years; or it can be that you are going to plea and go forward, which is what you've decided so far here today.  But that is your choice.

THE DEFENDANT: Yes.

THE COURT: Is anyone forcing you to make this choice to not have a trial?  That's what I need to know.

THE DEFENDANT: No.

Id. at 5-8.

Petitioner's allegations in proposition one are also belied by the "Plea of Guilty - Summary of Facts" form filed in Petitioner's state district court case.  See Dkt. # 13-11, O.R. Vol. II at 316-322.  On the first page of the form, Petitioner affirmed that he could read and understand the form.  Id. at 316 ¶ 5.  He identified Ashley Webb as his lawyer.  Id. at 316 ¶ 2.  Petitioner affirmed that he understood the nature and consequences of the proceeding, understood the charges against him and the range of punishment for each charge, had advised his lawyer regarding any available defenses, and had his lawyer's advice.  Id. at 316-18 ¶¶ 9, 15, 16, 20, 21.  Significantly, he answered "No" to the question, "Are you currently taking any medications or substances which affect your ability to understand these proceedings?"  Id. at 316 ¶ 6.  To confirm several of the questions on the plea form, including the question regarding medications, Petitioner's attorney requested that Petitioner put his initials next to the circled answers.  Additionally, as the dialogue above illustrates, the trial judge reviewed in great detail questions relating to coercion.  See id. at 318 ¶¶ 29, 30.  Finally, Petitioner

swore under oath that he had reviewed the form with his attorney, understood its contents, that his answers were true and correct, and that he understood he could be prosecuted for perjury if he had made false statements to the court. Id. at 318-19 ¶ 32.

While Petitioner claims he was coerced into pleading guilty, nothing in the record demonstrates that the actions of his attorney, the trial judge, or any other person rendered Petitioner's plea of guilty involuntary. Petitioner's attorney testified at the hearing on Petitioner's motion to withdraw his plea that while he knew Petitioner had various medical issues, including possible treatment by a "psychiatrist or a counselor" while in federal custody, he believed Petitioner was competent and understood what he was doing. See Dkt. # 13-9, Tr. Mot. Withdraw Plea Hr'g at 30, 35-38. Petitioner's attorney also testified that he "was not aware that [Petitioner] was taking anything to affect his cognitive ability." Id. at 40-41. At the hearing on Petitioner's motion to withdraw his plea, the trial judge stated that she recalled the Petitioner's guilty plea "very well," and that she "made sure that when [she] went through the plea form that [she] thought that he understood and was thinking clearly." Id. at 49. The trial judge then made a finding of fact that the court "[did not] hear anything from Mr. Kostich that he has had mental health treatment that would incur him to not be able to knowingly and voluntarily enter a plea." Id. Under 28 U.S.C. § 2254(e)(1), that finding is presumed correct unless Petitioner rebuts the presumption of correctness afforded to the trial court by clear and convincing evidence. Petitioner has not presented clear and convincing evidence sufficient to demonstrate that he was impaired by medication at the time of his plea and that the medication rendered his plea unknowing or involuntary. As a result, he has failed to rebut the presumption of correctness afforded to the state court's finding of fact that Petitioner's plea of guilty was knowingly and voluntarily entered. See Dkt. # 13-11, O.R. Vol. II at 319 ¶ 36.

In his habeas petition, Petitioner specifically alleges that his attorney provided ineffective assistance by coercing him to enter the blind plea of guilty. On certiorari appeal, Petitioner did not use the term "ineffective assistance of counsel," nor did he cite to Strickland v. Washington, 466 U.S. 668 (1984). He did, however, argue that his plea was coerced and that counsel misadvised him with regard to the range of punishment he faced upon entry of a blind plea. The OCCA considered these claims in resolving Petitioner's claim that his blind plea was not entered voluntarily. That resolution is entitled to deference under 28 U.S.C. § 2254(d), even though the OCCA did not specifically cite Strickland in its analysis. See Harrington, 562 U.S. 86, 131 S. Ct. at 784. In response to the petition, Respondent analyzes Petitioner's ineffective assistance of counsel argument, applying the Strickland standard, and argues Petitioner is not entitled to relief. See Dkt. # 12 at 7-8. For the reasons discussed below, the Court agrees with Respondent and finds that Petitioner is not entitled to habeas relief on his claim of ineffective assistance of counsel. See 28 U.S.C. § 2254(d).

Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; see also Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 689. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense

after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689; see also Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential lens" of § 2254(d)).

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). If Petitioner is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. See Strickland, 466 U.S. at 700. Thus, it is not always necessary to address both Strickland prongs.

In Hill v. Lockhart, 474 U.S. 52 (1985), the Supreme Court set out the applicable standard for reviewing ineffective assistance of counsel claims in the context of guilty pleas. In accord with Strickland, 466 U.S. at 687, a defendant challenging the effective assistance of counsel during the guilty plea process must show that counsel's performance was deficient and that such deficient performance prejudiced him. Id. at 57-58. As the Court explained in Hill,

> [I]n the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence . . . . The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Id. at 58-59. However, "a petitioner's 'mere allegation' that he would have insisted on trial but for his counsel's errors, although necessary, is ultimately insufficient to entitle him to relief." Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001) (quoting Hill, 474 U.S. at 59). Rather, the Court "look[s] to the factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial." Id.

Petitioner claims his counsel, Ashley Webb, "coerced Petitioner into filing a blind plea that was not knowing or intelligent considering the alternatives available but not known to Petitioner." (Dkt. # 1 at 5-6). To explain the alleged coercion by his attorney, Petitioner asserts that counsel "coerced [sic] Kostich under threat that if Kostich took [the case] to trial he would be convicted [and] the court would impose the maximum sentence of 35 years." Id. at 21. Additionally, Petitioner alleges "counsel informed Kostich of another Arson case he had before the same judge who received a 5 year probation [sentence] without a former conviction. Counsel expressed resonable [sic] expections [sic] of a 10 year probation [sentence], if he cooperated with a blind plea." Id. Petitioner also argues that his attorney was deficient because "counsel knew of [Petitioner's] drug use and instructed [Petitioner] to deceive [sic] the court [to allow the blind plea]," and failed to call witnesses or present mitigation evidence at the sentencing on his blind plea of guilty. Id. at 21-22.

The record refutes Petitioner's claims that his attorney provided ineffective assistance during either the entry of his blind plea of guilty or sentencing. First, the record demonstrates that counsel and the trial judge discussed the applicable sentencing range and the potential outcomes of a blind plea and a jury trial with Petitioner. At the hearing on Petitioner's motion to withdraw his plea, counsel testified that he explained the strengths and weaknesses of the case and what could happen

if the case were to proceed to trial. <u>See</u> Dkt. # 13-9, Tr. Mot. Withdraw Plea Hr'g at 32. Counsel advised Petitioner that "in light of all of our options available, if we went to trial there [was] a good possibility [Petitioner] was going to get the max [punishment] from a jury in Tulsa County." <u>Id.</u> Counsel also testified that he discussed with Petitioner the applicable range of punishment, and that while he would argue for probation at Petitioner's sentencing, nothing was guaranteed. <u>See id.</u> at 33. Counsel acknowledged he informed Petitioner of a different case, involving a previous client charged with a "similar type crime," where the client received "either five or ten years probation." <u>Id.</u> at 41. However, counsel stated he did not believe "anybody ever represented to [Petitioner] at any time . . . that the State would ever consider the possibility of probation." <u>Id.</u> at 41-42. Significantly, at the change of plea hearing, Petitioner testified that he filled out the plea form with the help of his attorney. <u>See</u> Dkt. # 13-7, Tr. Blind Plea Hr'g at 2. The plea form clearly stated the range of punishment and that no plea agreement had been reached. <u>See</u> Dkt. 13-11, O.R. Vol. II at 317-318 ¶¶ 16, 23, 25. In addition, the plea form, and Petitioner's answers in the affirmative, confirmed that Petitioner had "talked over the charge(s) with [his] lawyer," discussed possible defenses, and received his lawyer's advice. <u>See id.</u> at 318 ¶ 20. At the blind plea hearing, Petitioner also testified that he was not being forced to enter a blind plea and that he understood he could proceed to trial instead. <u>See</u> Dkt. # 13-7, Tr. Blind Plea Hr'g at 3. Additionally, as discussed in more detail above, the Court took considerable time to confirm that Petitioner was making the decision to enter a blind plea freely, and that he understood the consequences of that decision. Finally, while Petitioner argues in his petition that his counsel did not inform him of "available alternatives," he does not explain what these unknown alternatives were or how they would have impacted his decision to plead guilty.

Second, Petitioner's assertion that "counsel knew of [Petitioner's] drug use and instructed [Petitioner] to deceive the court," is not supported by the record. At the hearing on Petitioner's motion to withdraw his plea, counsel acknowledged that while he knew Petitioner had "been in contact with a psychiatrist [while in federal custody]," the question relating to past or current mental illness treatment included on the plea form was answered "No."[4]  See Dkt. # 13-9, Tr. Mot. Withdraw Plea Hr'g at 44; Dkt. # 13-11, O.R. Vol. II at 316 ¶ 8. However, counsel clearly testified that he "was not aware that [Petitioner] was taking anything to affect his cognitive ability" at the time of the blind plea hearing. See Dkt. # 13-9, Tr. Mot. Withdraw Plea Hr'g at 41. Petitioner also put his initials on the plea form confirming his answer of "No" to the question "Are you currently taking any medications or substances which affect your ability to understand these proceedings?" See Dkt. # 13-11, O.R. Vol. II at 316 ¶ 6. While Petitioner testified at the hearing to withdraw his blind plea that he was under the influence of anti-depression medication at the time of his plea, the trial judge determined at the conclusion of the hearing, that she "did not hear anything from Mr. Kostich that he has mental health treatment that would incur him to not be able to knowingly and voluntarily enter a plea." See Dkt. # 13-9, Tr. Mot. Withdraw Plea Hr'g at 49. Nothing in the record, or submitted by Petitioner in this habeas action, demonstrates that counsel instructed Petitioner to deceive the court regarding his medications.

Finally, Petitioner's allegation that counsel failed to present any mitigating evidence at his sentencing hearing is contradicted by the record. At Petitioner's sentencing hearing, counsel

---

[4]     While counsel could not recall who physically circled the answers on the plea form, he testified that he went over the plea form with Petitioner and they answered the questions together. See Dkt. # 13-9, Tr. Blind Plea Hr'g at 37-38. Additionally, he often requested that Petitioner put his initials next to certain questions to confirm the answer. See Dkt. # 13-11, O.R. Vol. I at 316-321.

submitted several exhibits to the trial court.  See Dkt. # 13-8, Tr. Sent. Hr'g at 15-18.  These exhibits

included letters of recommendation and/or support, certificates of achievement and completion from

several courses Petitioner completed while in custody, pictures of his residence before and after

incarceration, and medical information explaining the absence of testimony from his common law

wife/girlfriend Marilyn Crowdus.[5]  See id.  In total, counsel submitted fifty-one exhibits of

mitigating evidence on behalf of Petitioner at the sentencing hearing.  See id. at 18.  After admission

of these exhibits, the trial court recessed to review the mitigating evidence presented by counsel.

See id. at 20.  In addition to the exhibits presented, Petitioner made a statement and counsel made

a lengthy argument in mitigation.  See Dkt. # 13-8, Tr. Sent. Hr'g at 21-24, 37-45.  Petitioner's

counsel in the related federal criminal case also prepared a thorough sentencing memorandum, see

Dkt. # 28-2 at 63-86, and presented separate oral argument at Petitioner's sentencing hearing.  See

Dkt. # 13-8, Tr. Sent. Hr'g at 31-37.

Without more, Petitioner has failed to prove that counsel's performance was constitutionally

deficient.  See Strickland, 466 U.S. at 696-97 (explaining that defendants must overcome the "strong

presumption" that particular decisions by counsel can be characterized as sound trial strategy).

Counsel's strategic decision to recommend that Petitioner enter a blind plea of guilty was well

within the range of reasonable professional assistance.  Therefore, Petitioner has failed to

demonstrate that the OCCA's adjudication was contrary to, or an unreasonable application of

---

[5]     Petitioner argues counsel was ineffective because he "faild [sic] to obtain a statement from
Marilyn Crowdus who played a big part in [Petitioner's] federal acquittal, who had died of
cancer during the process."  Dkt. # 1 at 22.  However, Petitioner fails to explain what
mitigating evidence Ms. Crowdus would have offered in addition to the evidence presented,
or how this additional evidence would have impacted his sentencing in state court.

*Strickland*, and he is not entitled to habeas corpus relief on his claim that counsel provided ineffective assistance in coercing his blind plea of guilty.  28 U.S.C. § 2254(d).

### 2. Ineffective assistance of appellate counsel (Ground II)

In Ground II, Petitioner states that appellate counsel failed to "apply the legislative prohibitions against successive prosicutions [sic] that required dismissal of the charge." (Dkt. # 1 at 7).  Petitioner further claims he requested that appellate counsel "develope [sic] a double jeopardy ineffective counsel defence [sic] and she refused to do so prejiducing [sic] the outcome."  Id. Petitioner presented this claim to the state courts in his application for post-conviction relief.  In its opinion affirming the trial court's denial of post-conviction relief, the OCCA stated that:

> Petitioner also claims his attorneys both at the trial court level and on appeal were ineffective for failing to raise or adequately assert [the double jeopardy argument]. However, as the District Court found, the doctrine of dual sovereignty holds that a federal prosecution does not bar a subsequent state prosecution of a defendant who violates laws of each jurisdiction by the same acts.  Mack v. State, 2008 OK CR 23 ¶¶ 5-7, 188 P.3d 1284, 1287-88.  Thus, Petitioner has established neither that his counsel was ineffective nor sufficient reason to allow his claims to be the basis of this post-conviction application.  22 O.S.2001 § 1086; Fowler, supra.

(Dkt. # 12-3 at 2).  Respondent argues Petitioner has failed "to show [that] the decision of the OCCA was contrary to, or an unreasonable application of Strickland." (Dkt. # 12 at 19).

To be entitled to habeas corpus relief on his claim of ineffective assistance of counsel, Petitioner must demonstrate that the OCCA's adjudication was an unreasonable application of Strickland, 466 U.S. 668 (1984).  As detailed above in Section 1, under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial.  See Strickland, 466 U.S. at 687.

After review, the Court finds that Petitioner has failed to show that the OCCA's adjudication of his claim was contrary to, or an unreasonable application of, Strickland.  See 28 U.S.C. § 2254(d).

The OCCA held that Petitioner failed to show his appellate counsel was ineffective for failing to raise the double jeopardy claim, because the court determined the omitted claim was meritless. See Dkt. # 12-3 at 2. The Tenth Circuit has consistently held that "[w]hile counsel should not omit 'plainly meritorious' claims, counsel need not raise meritless issues." Smith v. Workman, 550 F.3d 1258 (10th Cir. 2008) (quoting Miller v. Mullin, 354 F.3d 1288, 1298 (10th Cir. 2004)). To prevail, a petitioner must "show an 'objectively unreasonable' decision by the appellate counsel as well as a 'reasonable probability that the omitted claim would have resulted in relief.'" Id. (quoting Neill v. Gibson, 278 F.3d 1044, 1057 & n. 5 (10th Cir. 2001)).

After careful review, this Court finds that Petitioner has failed to make the necessary showing. As stated above, Petitioner claims his appellate counsel was ineffective for failing to argue that his state criminal conviction was prohibited by the double jeopardy clause. The record demonstrates that while Petitioner's appellate counsel researched and considered the double jeopardy claim, counsel eventually determined the claim was meritless. See Dkt. # 28-3 at 5-6.

The double jeopardy clause protects against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989). However, the Supreme Court has held that "[w]hen a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.'" Heath v. Alabama, 474 U.S. 82, 88 (quoting United States v. Lana, 260 U.S. 377, 382 (1922)). Therefore, when a defendant is charged and prosecuted by two separate sovereigns, "it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable." Id. (quoting Moore v. Illinois, 14 How. 13, 19, 14 L. Ed. 306 (1852)). This rule is

commonly referred to as the "dual sovereignty doctrine." See id. Entities are "separate sovereigns" if they "draw their authority to punish the offender from distinct sources of power." Id. "'A classic application of the dual sovereignty doctrine is the case of successive prosecutions by a state and the federal government.'" United States v. Barrett, 496 F.3d 1079, 1118 (10th Cir. 2007) (quoting United States v. Long, 324 F.3d 475, 478 (7th Cir. 2003)). The dual sovereignty doctrine has been recognized and applied by the Tenth Circuit. See, e.g., Barrett, 496 F.3d 1079; United States v. Raymer, 941 F.2d 1031 (10th Cir. 1991); United States v. Gourley, 835 F.2d 249 (10th Cir. 1987).

Petitioner bases the majority of his double jeopardy argument on OKLA. STAT. tit. 22, § 130 (2014), and State ex rel. Cobb v. Mills, 163 P.2d 558 (Okla. Crim. App. 1945).[6] See Dkt. # 1 at 19, 56-57. Petitioner argues that OKLA. STAT. tit. 22, § 130 and Cobb demonstrate that the dual sovereignty doctrine has no application in Oklahoma. In Cobb, the OCCA determined the "question of double punishment" was governed by a different statute, OKLA. STAT. tit. 21, § 25 (1941). See Cobb, 163 P.2d at 571. At the time, OKLA. STAT. tit. 21, § 25 stated as follows:

> Whenever it appears upon the trial that the accused has already been acquitted or convicted upon any criminal prosecution under the laws of another state, government or country, founded upon the act or omission in respect to which he is upon trial, this is a sufficient defense.

Cobb, 163 P.2d at 571. The OCCA concluded that OKLA. STAT. tit. 21, § 25 was "susceptible of but one construction. And [that] a conviction in a federal court for the same act as charged in a prosecution in a state court is a conviction under the laws of a different 'government' within the meaning of the statute." Id. While the OCCA cited to other Oklahoma statutes in the Cobb opinion,

---

[6] The Court notes Petitioner also mentions several other Oklahoma statutes in his petition, including OKLA. STAT. tit. 22, §§ 11, 14, 522. See Dkt. # 1 at 19. However, each of these statutes either refers to successive prosecutions by the State of Oklahoma, or the general double jeopardy rule.

including OKLA. STAT. tit. 22, § 130, the court clearly stated that its holding in Cobb relied solely upon the use of the word "government" in OKLA. STAT. tit. 21, § 25:

> It will thus be noted that this court has taken cognizance of the use of the word 'government' in this statute, and that by reason of the use of the same an exception was made to the general rule announced by other states which had no such statute.

Id. OKLA. STAT. tit. 21, § 25 has since been repealed, see OKLA. STAT. tit. 21, § 25, repealed by Laws 1986, c. 178, § 1, and OKLA. STAT. tit. 22, § 130 does not include the word "government."[7] As the OCCA's decision in Cobb relied solely upon OKLA. STAT. tit. 21, § 25 and its use of the word "government," Petitioner's reliance upon OKLA. STAT. tit. 22, § 130 is unpersuasive. In addition, and most significantly, the OCCA has since recognized the dual sovereignty doctrine in Mack v. State, 188 P.3d 1284 (Okla. Crim. App. 2008). For these reasons, the Court agrees with the OCCA's conclusion that the dual sovereignty doctrine applies to Petitioner's case, and the omitted double jeopardy claim is meritless. While it is true that both the federal and state charges were based on the same acts of Petitioner, the federal government and the state of Oklahoma are separate sovereigns. Therefore, when Petitioner committed the acts charged, he committed two separate and distinct offenses, and no double jeopardy violation resulted from both sovereigns prosecuting the defendant for the offenses committed.

Petitioner has failed to show both that his appellate counsel was ineffective for making an "objectively unreasonable" decision to omit the double jeopardy claim, and that there is a "reasonable probability that the omitted claim would have resulted in relief." See Smith, 550 F.3d at 1268. Therefore, Petitioner has failed to demonstrate that the OCCA's adjudication of this claim

---

[7] OKLA. STAT. tit. 22, § 130 states, "When an act charged as a public offense is within the jurisdiction of another territory, county or state, as well as this state, a conviction or acquittal thereof in the former is a bar to a prosecution therefor in this state."

was contrary to, or an unreasonable application of <u>Strickland</u>, and his request for habeas corpus relief on Ground II shall be denied.  <u>See</u> 28 U.S.C. § 2254(d).

**C.    Procedural Bar (Grounds III, IV and V)**

In Ground III, Petitioner alleges that his conviction for Arson in Oklahoma state court violates the double jeopardy clause because he had previously been convicted of federal crimes based on the same acts.  <u>See</u> Dkt. # 1 at 8-9.  In Grounds IV and V, Petitioner claims both his trial and preliminary hearing counsel were ineffective for failing to raise and effectively argue "the legislative prohibitions [related to double jeopardy] that would have brought [Petitioner's state] case to a swift end."  <u>See</u> Dkt. # 1 at 11.  The OCCA, in its opinion affirming the trial court's denial of post-conviction relief, determined Petitioner had "not established any sufficient reason to allow his current issues to be the basis of this application for post-conviction relief."  (Dkt. # 12-3 at 2).  The OCCA further explained its analysis of Petitioner's claims:

> The issues Petitioner raises either were or could have been raised prior to his plea of guilty, in his motion to withdraw plea, or in his direct appeal to this Court.  All issues that were previously raised and ruled upon are barred as <u>res judicata</u>, and all issues that could have been raised in previous proceedings but were not are waived, and may not be the basis of a post-conviction application.  22 O.S. 2001, § 1086; <u>Fowler v. State</u>, 1995 OK CR 29, ¶2, 896 P.2d 566, 569.  Petitioner has not established any sufficient reason to allow his current issues to be the basis of this application for post-conviction relief.  <u>Id.</u>  Petitioner claims the State prosecution in this case was barred, and the District Court lacked jurisdiction, due to double jeopardy principles because his federal prosecution was based upon the same acts and transactions used to prosecute this case.  Petitioner also claims his attorneys both at the trial court level and on appeal were ineffective for failing to raise or adequately assert this issue.  However, as the District Court found, the doctrine of dual sovereignty holds that a federal prosecution does not bar a subsequent state prosecution of a defendant who violates laws of each jurisdiction by the same acts.  <u>Mack v. State</u>, 2008 OK CR 23, ¶¶ 5-7, 188 P.3d 1284, 1287-88.  Thus, Petitioner has established neither that his counsel was ineffective nor sufficient reason to allow his claims to be the basis of this post-conviction application.  22 O.S.2001 § 1086; <u>Fowler</u>, <u>supra</u>.

*Id.* Respondent argues the OCCA's holding that Petitioner waived these claims by failing to raise them on certiorari appeal "was based on an adequate ground," and the OCCA correctly cited to "independent state law" supporting the procedural bar. See Dkt. # 12 at 16. Based on this determination, Respondent asserts that Petitioner's failure to raise his double jeopardy claim on certiorari appeal to the OCCA "operates as a procedural bar to any federal habeas relief if the issue can be decided solely from the trial court record."[8] *Id.* at 17.

As a preliminary matter, while the OCCA cited to authority relating to procedural bar, the OCCA also briefly discussed the merits of Petitioner's double jeopardy claim. See Dkt. # 12-3 at 2. However, it appears the OCCA only reached the merits of Petitioner's double jeopardy claim to evaluate Petitioner's ineffective assistance of appellate counsel claim (Ground II). Additionally, because Petitioner argues his preliminary hearing, trial, and appellate counsel were all ineffective for failing to properly raise double jeopardy concerns, it could be argued the OCCA reached the merits of Petitioner's ineffective trial and preliminary counsel claims while addressing Petitioner's ineffective appellate counsel claim. Upon review of the record, the Court finds that the OCCA's primary basis for rejecting Grounds III, IV, and V was that they had been waived. Therefore, this Court is required to "acknowledge and apply the OCCA's procedural bar ruling, even though the OCCA, on an alternative basis, briefly addressed and rejected the merits of [the habeas petitioner's] claim." Cole v. Trammell, 755 F.3d 1142, 1158 (10th Cir. 2014) (quoting Thacker v. Workman, 678 F.3d 820, 834 n. 5 (10th Cir. 2012)).

---

[8]     In his response, Respondent addressed Petitioner's double jeopardy claim (Ground III) along with Petitioner's ineffective assistance claims (Grounds IV and V) and appears to have applied the rule found in English v. Cody, 146 F.3d 1257 (10th Cir. 1998) to all three claims. The Court notes the specific rule stated in English relates only to claims of ineffective assistance of counsel first raised in an application for post-conviction relief.

The doctrine of procedural bar prohibits a federal court from considering a specific habeas claim that was resolved on an independent and adequate state procedural ground, unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995). "A state court finding of procedural default is independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985. A finding of procedural default is an adequate state ground if it has been applied evenhandedly in the "vast majority" of cases. Id. at 986 (citing Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir. 1991)).

Applying the principles of procedural default to these facts, the Court concludes that Petitioner's Grounds III, IV and V are procedurally barred from this Court's review. The state court's procedural bar as applied to these claims was an independent ground because Petitioner's failure to comply with state procedural rules was "the exclusive basis for the state court's holding." See Maes, 46 F.3d at 985. In addition, as to the double jeopardy claim raised in Ground III, the Tenth Circuit has held that Oklahoma courts have consistently "applied the procedural bar of Okla. Stat. Ann. Tit. 22 § 1086 to untimely double jeopardy claims." Steele v. Young, 11 F.3d 1518 (10th Cir. 1993). "Furthermore, it has been stated clearly that section 1086 'strictly' prohibits raising issues that could have been raised before, even issues involving fundamental, constitutional rights." Id. (citing Johnson v. State, 823 P.2d 370, 372 (Okla. Crim. App. 1991)). Therefore, the procedural bar imposed by the OCCA on the claim raised in Ground III was based on independent state law grounds adequate to preclude federal review.

As to Grounds IV and V, when the underlying claim is ineffective assistance of counsel, the Tenth Circuit has recognized that countervailing concerns justify an exception to the general rule of procedural default. Brecheen v. Reynolds, 41 F.3d 1343, 1363 (10th Cir. 1994) (citing Kimmelman v. Morrison, 477 U.S. 365 (1986)). The unique concerns are "dictated by the interplay of two factors: the need for additional fact-finding, along with the need to permit the petitioner to consult with separate counsel on appeal in order to obtain an objective assessment as to trial counsel's performance." Id. at 1364 (citing Osborn v. Shillinger, 861 F.2d 612, 623 (10th Cir. 1988)). The Tenth Circuit explicitly narrowed the circumstances requiring imposition of a procedural bar on ineffective assistance of counsel claims first raised collaterally in English v. Cody, 146 F.3d 1257 (10th Cir. 1998). In English, the court concluded that:

> Kimmelman, Osborn, and Brecheen indicate that the Oklahoma bar will apply in those limited cases meeting the following two conditions: trial and appellate counsel differ; and the ineffectiveness claim can be resolved upon the trial record alone. All other ineffectiveness claims are procedurally barred only if Oklahoma's special appellate remand rule for ineffectiveness claims is adequately and evenhandedly applied.

Id. at 1264 (citation omitted).

The record confirms that Petitioner's ineffective assistance of counsel claims detailed in Grounds IV and V were first raised in Petitioner's application for post-conviction relief. See Dkt. # 2 at 28. Petitioner was represented during the preliminary hearing by attorney Marney Hill. See Dkt. # 13-1, Tr. Prelim. Hr'g. Before and after the preliminary hearing, including at Petitioner's blind plea and sentencing hearings, he was represented by attorney Ashley Webb. See Dkt. # 1 at 7, 10-11. On appeal, Petitioner was represented by attorney Ricki Walterscheid. See Dkt. # 12-1 at 1. For purposes of the first requirement identified in English, the Court finds that Petitioner had the opportunity to confer with separate counsel on appeal. The second English factor requires that

the claim could have been resolved either "upon the trial record alone" or after adequately developing a factual record through some other procedural mechanism. See English, 146 F.3d at 1263-64. In Grounds IV and V Petitioner alleges that both counsel "fail[ed] to raise the legislative prohibitions [relating to double jeopardy] that required dismissal of the case." See Dkt. # 1 at 10. These claims can be resolved upon the trial record alone. The trial record contains several references to Petitioner's federal criminal case and evaluation of potential double jeopardy concerns.[9] Therefore, Petitioner's Grounds IV and V are procedurally barred. See English, 146 F.3d at 1264.

Because of the procedural default of the identified claims in state court, this Court may not consider the claims unless Petitioner is able to show cause and prejudice for the default, or demonstrate that a fundamental miscarriage of justice would result if his claims are not considered. See Coleman, 501 U.S. at 750. "'Cause' must be 'something external to the petitioner, something that cannot fairly be attributed to him . . . .'" Steele, 11 F.3d at 1522 (quoting Coleman, 501 U.S. at 753). Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. See Murray v. Carrier, 477 U.S. 478, 488 (1986). As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he

---

[9]   Petitioner's preliminary hearing and trial counsel both raised the "legislative prohibitions" against successive prosecution and double punishment that Petitioner alleges in his petition. Before the preliminary hearing, attorney Webb filed a motion to dismiss alleging double jeopardy concerns. See Dkt. # 13-10, O.R. Vol. I at 44-51. The motion included exhibits related to Petitioner's federal criminal case. At the preliminary hearing, attorney Hill orally argued the written motion. See Dkt. # 13-1, Tr. Prelim Hr'g at 3. In addition, once Petitioner's case reached the district judge, attorney Webb again filed a motion to dismiss, arguing that the doctrine of dual sovereignty did not apply in Petitioner's case. See Dkt. # 13-10, O.R. Vol. I at 132-94. This motion also included various exhibits related to Petitioner's federal criminal case.

complains." United States v. Frady, 456 U.S. 152, 168 (1982). The "fundamental miscarriage of justice exception" instead requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. McCleskey v. Zant, 499 U.S. 467, 494 (1991); see also Steele, 11 F.3d at 1522.

After review, the Court finds that Petitioner has not shown cause and prejudice for his state default. Petitioner has failed to show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Coleman, 501 U.S. at 753. Further, as the Court has addressed and rejected Petitioner's claim of ineffective assistance of appellate counsel in Part B.2 above, ineffective assistance of appellate counsel cannot serve as cause to overcome the procedural bar. Also, Petitioner has also failed to demonstrate that federal habeas review is required under the fundamental miscarriage of justice exception. Nowhere in his petition does Petitioner claim to be actually innocent of the crimes of which he was convicted. Therefore, Petitioner does not fall within the narrow "fundamental miscarriage of justice" exception.

Accordingly, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his defaulted claims are not considered, the Court concludes that Grounds III, IV, and V are procedurally barred. See Coleman, 501 U.S. at 724. For that reason, Petitioner's request for habeas corpus relief on Grounds III, IV, and V shall be denied.

**D.     Challenge to Oklahoma's Post Conviction Procedure Act (Ground VI)**

In Ground VI, Petitioner argues the "Post Conviction Procedure Act of 22 § 1080 et sec [sic] is badly broken and failes [sic] the test of legislative intent." (Dkt. # 1 at 11). Additionally, Petitioner alleges "[t]he Courts of Oklahoma failed to live up to the legislative intent [of the Post Conviction Procedure Act] and grant Petitioner [the] relief he was entitled to by law." Id. at 12.

As a preliminary matter, as discussed in more detail above in Part A, while Petitioner failed to present this claim to the OCCA, in light of the procedural posture of this case it would be futile to require Petitioner to return to state court to exhaust this claim. See 28 U.S.C. § 2254(b)(1)(B). As discussed below, the claim is not cognizable on habeas corpus review and, for that reason, is denied. See 28 U.S.C. § 2254(b)(2).

The Tenth Circuit Court of Appeals has consistently ruled that challenges to state post-conviction procedures do not rise to the level of federal constitutional claims cognizable on habeas corpus review. See Phillips v. Ferguson, 182 F.3d 769, 773-74 (10th Cir. 1999); Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir. 1998) (when petitioner asserts no constitutional trial error, but only error in the state post-conviction procedure, no relief can be granted in federal habeas corpus); Steele v. Young, 11 F.3d 1518, 1524 (10th Cir. 1993); Sawyer v. Smith, 497 U.S. 227 (1990). As a result, to the extent Petitioner challenges state post-conviction procedures, his claim raised in Ground VI is not cognizable in this federal habeas corpus action and shall be denied.

## E.     Certificate of Appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In addition, when the Court's ruling is based on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484.

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA is debatable among jurists of reason. <u>See</u> <u>Dockins v. Hines</u>, 374 F.3d 935, 938 (10th Cir. 2004). As to those claims denied on a procedural basis, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting in the denial of the petition on procedural grounds is debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## *CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.  The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

2.  Petitioner's motion for bail release hearing (Dkt. # 50) is **declared moot**.

3.  A separate judgment in favor of Respondent shall be entered in this matter.

4.  A certificate of appealability is **denied**.

    **DATED** this 5th day of January, 2015.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE